## DECEMBER TERM, 1843.

### JOHN FLETCHER *v.* WILLIAM WILSON, *et al.*

A rescission of a contract, on account of alleged defect of title, will not be granted, where, at the hearing of the case, it is apparent a perfect title may be had, and no fraud is alleged or proved.

A person selling property under a defective claim, afterwards by purchase or descent acquires a perfect title; *held,* that that title will accrue to the benefit of the vendee.

As a general rule, a court of equity will not rescind a contract for mere defect of title, where the vendor has been guilty of no fraud, mistake, or misrepresentation, *unless,* at the time of the decree, it appears that the vendor is totally unable to make title, and *there is no adequate remedy at law.*

Time is never important in equity, unless made so by the very terms of the contract, or is necessarily so from the very nature of the property, about which the contract is made.

A vendee, discovering a defect in his title, should at once, if he designs doing so at all, surrender the possession of the property, and demand a reseission, and his neglect to do so, is a waiver of his right to a rescission.

A defendant, in his cross-bill against the complainant, cannot introduce new and distinct subjects of litigation from those which are in controversy in the original suit.

A defendant to a bill, having any right in the property in controversy, not noticed in the original bill, may assert that right, by way of cross-bill.

The husband has no power, without the consent of the wife, to convert her real property into personalty, so as to change the course of descent or right of succession.

THE record in this case is very voluminous, and the pleadings complicated. An attempt will be made, however, for the purpose of exhibiting the facts upon which the Chancellor based his opinion, to give a full yet succinct history of the case. To do this, it will not be necessary to abstract in full the various bills, answers, cross-bills, amended bills, and exhibits, which constitute the case, and have swelled the record to its present size. Such portions only will be presented as bear upon the merits of the controversy.

William Wilson, and Joseph Conn, in January, 1836, sold a lot in the city of Natchez, to the complainant, John Fletcher: who paid them two thousand dollars in cash, which was divided equally between them, and executed his two notes, for two thousand dollars each, payable one and two years after date to Wilson and Conn, or either of them. Wilson, as heir-at-law of his deceased brother, derived title to the lot; Conn's wife was a sister of Wilson,

and, together with Wilson, constituted the only heirs of their brother, and in them was vested the full legal title to the lot : upon the sale to the complainant, Wilson and Conn executed a joint deed to him, which was put upon record in the proper office, and the complainant immediately executed to them a mortgage upon the lots, to secure the purchase-money yet due.   The deed by Wilson and Conn to the complainant, was redelivered to them by the complainant, to take to the county of Yazoo, to obtain Mrs. Wilson's relinquishment of dower, and to the county of Attala to obtain Mrs. Conn's conveyance of her right in the property.   The complainant was immediately put in possession of the property, and remained in possession undisturbed.

This relinquishment of the wives, and return of the deed, was to be effected in a reasonable time.

In February, 1839, Wilson and Conn sued Fletcher in the Adams Circuit Court, upon the two notes for $2000 each ; Fletcher, in June, 1840, enjoined the suit, upon the ground of defect in the title, in the neglect of the wives of Conn and Wilson, to relinquish their respective rights in the property.   He states in his bill, that he had lost several opportunities of sale for want of title, and prays for a specific performance, and damages for their injuries sustained by the delay, or for a rescission of the contract and compensation.

Wilson and Conn both answered, and made their answers cross-bills.

Wilson disclosed the death of Mrs. Conn, his sister, and the descent of her interest in the land to him, and stated that Mrs. Conn had refused to convey her right at all in her lifetime to Fletcher, and had never done so ; but that Mrs. Wilson had united with him and Conn in the deed, and he had sent it back to Fletcher, who had refused to receive it.   That the whole title to the lot was then in him, and passed by the deed he had already executed (and which he exhibited with his answer, and tendered it to the complainant) ; and if not, he was willing and ready to make a perfect title to the property, and denied that Fletcher had lost any sale of the land for want of title.   In his cross-bill, he set up the mortgage ; claimed that the notes payable to Wilson and Conn, by the death of his

sister, had become his own, and that Conn had no longer any interest in them, and prayed a foreclosure of the mortgage.    To this cross-bill, Conn and Fletcher were made defendants.

Conn's answer to the original bill on the subject of the sale, the death of Mrs. Conn, and her refusal to join in the deed, are in substance the same with Wilson's ; in his cross-bill, he states a great deal of irrelevant matter, the substance of it, however, being the assertion of his right to one half the purchase-money of the lot, and a prayer that Wilson might be enjoined from settling with Fletcher for it.

Wilson answered this cross-bill of Conn's, and denied his right to any part of the money, and Conn, on the 26th of December, 1842, dismissed his cross-bill.

On the 1st of March, 1842, the complainant filed an amended bill, alleging, that, at the time of exhibiting his original bill, he was wholly ignorant of the refusal of Conn's wife to execute the deed to the lot ; that he was, by the original deed, only clothed with Conn's life estate in one half the lot ; that, in consequence of this defect, the lot is not as valuable as it would be if the title were perfect ; and he prays, therefore, for a rescission of the contract, and that he may be repaid the sum he had already advanced, and be reimbursed for his improvements.

Wilson answered this amended bill, denies the allegations of ignorance of Mrs. Conn's refusal to unite in the deed, and refers to the exhibits to the original bill of the complainant, of the letters of Conn to Fletcher, in which Conn informs Fletcher, that his wife, Mrs. Conn, *bitterly* refused to relinquish her interest.

Upon Wilson's cross-bill, a *pro confesso* was taken in open court, on the 26th February, 1842, against Fletcher and Conn.

The proceedings in the case as to Enos Fletcher and Isaac Stebbins, which have only added to the prolixity and perplexity of the record, are not noticed.

*Montgomery* and *Boyd*, for complainant.

*John Battaile*, for defendant, Wilson.

It is contended on the part of Wilson, that the contract of sale must be confirmed : that Fletcher got possession of the house

and lot, and has all along had possession from 1836, down to the present time, is admitted by his original and amended bills, and appears from the proofs in the cause.   It is admitted, also, that he took a deed with full covenants from Wilson and Conn, and the deed itself proves it.   It is not alleged, that there ever has been any eviction, or even that it is threatened ; nor that Wilson or Conn are insolvent.   Wilson has acted in good faith, throughout, and done all that he could to perform the contract, and, it is insisted, has performed it in a reasonable time, considering the unforeseen and unavoidable circumstances and obstacles which have presented themselves, and which he neither foresaw, nor had any hand in occasioning, and could not prevent.   It is true, there was some delay in making the title, but that was not caused by the defendant, Wilson.   He did all that he could to complete the title by executing and acknowledging with Conn the deed, which was approved by Fletcher, and procuring his wife to do the same, and relinquish her right of dower :  and there was only a delay of a few months between the time of his signing it, and that of his wife's acknowledgment ; which delay was occasioned by the refusal of Mrs. Conn to convey her interest, and ineffectual endeavors to persuade her.   There was not any fraud, misrepresentation, or deception practised by Wilson or Fletcher.   The misrepresentation, if any, to Fletcher, was on the part of Conn, in representing that his wife was willing to sell her interest.   But it is clear that Fletcher, at the time of sale, knew that the right to one half of said house and lot was in Mrs. Conn, and that Conn had not any right to sell her interest.   He therefore cannot complain that he was deceived.   The title-deed was executed by Conn and Wilson and wife, in 1836, and recorded as to Wilson and Conn ; the suits in Adams Circuit Court, on the notes, for the purchase-money, were instituted in February, 1839.   Mrs. Conn died in March, 1838, and Fletcher only filed his bill in June, 1840.   The legal title to said house and lot devolved on Wilson alone, on the death of Mrs. Conn, his sister ; that is, to the half interest which had belonged to his sister.   The depositions of Alexander Jourdan, John Ross, James Foster, and Robert Alexander, prove clearly that Wilson and his sister, Mrs. Conn, were the only legal heirs of Patrick

Wilson, deceased, the former owner of the property; that Mrs. Conn died, without ever having had a child by said Conn, and without leaving any children, or making a will, or having in her life-time conveyed her interest in said property to any one : and that defendant, Wilson, her brother, is her only heir, which is admitted by Fletcher's answer to Wilson's cross-bill. The pedigree and heirship of the defendant, Wilson, is proved to the exclusion of every reasonable doubt by the best evidence, as appears from the depositions themselves, which the nature of the case will admit of. The evidence on this point is sufficient, according to the strict rule of legal evidence in such cases. 1 Starkie's *Ev.* 29 (edition, 2 vols. in 1) ; 2 Stark. Ev. 603–615 ; 13 Eng. Com. Law R. 426 ; 15 J. R. 226, 227 ; 1 Harr. and J. 356. It being established, that Wilson and his sister, Mrs. Conn, were, at the time of said sale, the only heirs-at-law of said Patrick Wilson ; and on the death of Mrs. Conn, her brother, the defendant, Wilson, having her interest, it follows, that if Wilson had not the full legal title at the time of executing said deed to Fletcher, together with said Conn, and Wilson and wife : he possessed the remaining legal interest in said house and lot, on the death of Mrs. Conn ; and the deed which himself and wife, and said Conn, had executed to Fletcher, being a joint deed, with full covenants of warranty. 2 Edw. R. 37 a., the after-acquired interest, which he heired from Mrs. Conn, enured to the benefit of said Fletcher. See 5 Paige, R. 300, on this point. So that Fletcher had a perfect legal title before suit was brought for the balance of the purchase-money, due by said two promissory notes ; and two years before, Fletcher filed his original bill for a specific performance or rescission of the contract, for the prayer of his bill was in the alternative. If this view of the case be correct, and it certainly is sustained by the proofs in the cause, Fletcher has no equity on which to found his bill, and no claim to the interference of this Honorable Court. But perhaps he will pretend, that he did not know that his title was perfect, when he filed his bill. To this we answer, he ought to have known it, before he swore to his bill. Wilson swears, positively, that he sent an agent to Natchez for the express purpose of tendering said title-deed to said Fletcher ; who returned, and reported that he had tendered

the same to Fletcher, who refused it, and the deed is now filed as an exhibit. It is true, Fletcher swears that no tender was made of a title-deed. But the principle is well settled, that more credit is due to affirmative and positive testimony, than negative. " Where a vendor has proceeded to make out his title, and has not been guilty of gross negligence, equity will assist him, although the title was not deduced at the time appointed ; and the time will be considered as waived, where a purchaser permits a long time to elapse." 1 Sugd. on Ven. (new ed.) p. 500, 501 ; 1 Wheat. 179 – 196 ;. 5 Cranch, 262 ; 2 Dess. 583. Fletcher did not file his bill for a specific performance, or a rescission of the contract, until June, 1840, more than four years after the title, as he says, was to have been made. And then only, as is most probable, to stay the suit or judgment therein in Adams Circuit Court for the purchase-money, and to delay the payment of the same. " A contract ought never to be rescinded, except in cases of fraud, or plain and palpable mistake." 3 Ran. 504, and authorities there cited. " A court of equity will refuse to rescind a contract, in many cases, where it would also refuse to decree a specific performance." 3 Ran. 504, and authorities there cited. *Mortlock* v. *Butler*, 10 Ves. 306. " The vendor may perfect the title at any time before final decree." 1 Sug. on Ven. (new ed.) p. 502, 503, 264, 265, 266 ; 6 Madd. 366, 256 ; 7 Ves. jun. 202 ; 1 Madd. 348 ; 2 P. Wms. 629 ; 6 Ves. jun. 646 ; 7 Id. 265 ; *Clute* v. *Robinson*, 2 J. R. 597 ; 5 Paige, R. 235. The decreeing a specific performance is a matter of discretion. 1 Sugd. on Ven. (new ed. 2 vols. in 1) 245 ; 6 J. C. R. 111, 222 ; 4 Wheat. 465.

A court of equity will frequently decree a specific performance, where the terms of the agreement have not been strictly performed on the part of the person seeking specific performance. 1 Sug. on Ven. (new edition, 2 vols in 1) 246, 257, and authorities there cited. And it has been decreed against an heir, on the contract of his ancestor, who died before he completed it. 1 Sug. on Ven. (new edition, 2 vols in 1) 257 ; and if against an heir, why not for an heir ? Where a party fails in performing the contract, the other, if he means to rescind, should give a clear notice of his intention. 1 Sug. on Ven. 261 ; 6 Maddox, 18. But here was

an acquiescence of more than four years. 1 J. C. R. 370 ; 1 Dev. & Bat. E. 279. And then a bill filed in the alternative, for performance or rescission. A rescission at this late day would be greatly inconvenient to Wilson. Fletcher gets the title he bought, a fee-simple title, to the whole property. From every view of the case, the counsel for Wilson is of opinion, that the contract of sale ought not to be rescinded. A substantial performance as to title, is all that is requisite. 6 Paige, R. 407, 412 ; 6 J. C. R. 38 ; Sug. 352, 299 ; 1 J. C. R. 356. Though the original bill of Fletcher prays a performance or a rescission, counsel for Wilson is at a loss to determine, whether Fletcher now means to insist upon a performance, or a rescission. But as in his amended bill he prays, that " said contract of sale, for the purchase of said house and lot, may be altogether rescinded and set aside," counsel of Wilson must conclude that rescission is insisted on.

The only question in this cause, of real difficulty, if indeed his Honor the Chancellor shall find any difficulty even in that, is, that with regard to the claim Fletcher sets up, and also insists upon, of damages for the advantage of his bargain, which he says he measurably lost in not being able to sell the property at a considerable advance on the purchase-money, by reason of the delay in making the title. But if a rescission of the contract is now, as it undoubtedly is, the relief asked by Fletcher, in his amended prayer, and insisted on by him, or if the Court should decree a rescission, in either case, it is contended, on the part of Wilson, that this Court will not decree damages, or direct an issue of *quantum damnificatus*. Fletcher, it would seem, insists upon rescission and damages, or damages solely ; and this Court cannot grant either the one relief or the other. " Compensation or damages ought, therefore, to be decreed in equity, only as incidental to other relief sought by the bill, and granted by the court ; or where there is no adequate relief at law, or where some peculiar equity intervenes." 2 Story's Eq. 104, 105, 106 ; 4 J. C. R. 560 ; 2 Robinson's (Va.) Pr. 187, 188, 189.

" Courts of equity ought not to entertain bills for compensation, or damages, except as incidental to other relief ; where the contract is of such a nature, that an adequate remedy lies at law for such compensation or damages. 2 Story's Eq. 107.

"In the present state of the authorities, involving as they certainly do, some conflict of opinion, it is not possible to affirm more, than that the jurisdiction for compensation or damages does not ordinarily attach in equity, except as ancillary to a specific performance, as to some other relief." 2 Story's Eq. 108, 109. "If it does attach in any other cases, it must be under very special circumstances, and upon peculiar equities; as, for instance, in cases of fraud; or in cases, where the party has disabled himself by matters, *ex post facto*, from a specific performance; or in cases, where there is adequate remedy at law." Id. 109.

"As a general rule, a purchaser is not entitled to any compensation for the fancied goodness of his bargain, which he may suppose he has lost." 1 Sug. 252, 253; 1 Wheat. 179; 5 Cranch, 262; 1 Dess. 382; 2 Bibb, 434; 3 Bibb, 317; 2 Call, 421; 1 Peters, C. C. R. 85; Dudley's R. 133.

From the above authorities, it is certain that a rescission and damages, or damages alone, without specific performance, cannot be decreed. Nor from the authorities last cited, can Fletcher obtain a decree from this Court for damages, in consequence of his being unable to sell the property at an advance, because of the delay in making the title, or for the fancied goodness of his bargain, which he may suppose he has lost. But it is denied in Wilson's answer, that he was prevented from selling at an advance, and shown that he did sell to Enos Fletcher for $10,000.

Nor can he, in this case, have a decree for damages, for the mere delay in making title, even though the Court should decree that which is contrary to what he seeks, a specific performance; because he has a remedy at law upon the covenants in the deed executed and delivered by Wilson and Conn to him; and, unless he obtains a rescission of the contract, he can resort to those covenants. It is difficult to conceive how a party, coming into a court of equity, and praying for the rescission of a contract, can, on equitable principles, ask of a court of equity damages alleged to have been occasioned by the non-fulfilment of that contract, or for improvements, &c., under the circumstances of this case, which non-fulfilment is the consequence of his own act.

"It may be stated, as a general proposition, that for breaches

Fletcher v. Wilson, et al.

of contract, and other wrongs and injuries, cognizable at law, courts of equity do not entertain jurisdiction, to give redress by way of compensation or damages, where they constitute the sole objects of the bill.    For, whenever the matter of the bill is merely for damages, and there is a perfect remedy therefor at law, it is far better that they should be ascertained by a jury, than by the conscience of the equity judge.    And, indeed, the just foundation of equitable jurisdiction fails in all such cases, as there is a plain, complete, and adequate remedy at law."  2 Story's Eq. 104.

A court of equity can give damages in no case where the party has a clear remedy at law.  6 Ran. 658 ; 3 Ran. 238.

And because the damages for the mere delay in this case cannot be estimated ; for Fletcher has had the undisturbed possession and enjoyment of the property.    He knew at the time of the sale that Conn had no title to the property, and that he had no right to contract with Conn for the sale of Mrs. Conn's real estate.    Wilson has done nothing ex post facto, to disable himself from the making a specific performance ; and there has been no damage suffered or done.    The above consideration of this question is surely correct ; even if it be considered that Fletcher seeks a specific performance.    For there can be no compensation or damages, unless there be some violation of the terms of the contract, or inability to perform, either of which is a breach of contract, and consequently a prayer for a specific performance is inconsistent with such breach.    But it has been decided, that "a bill in any form, claiming damages for breach of contract, cannot be entertained in equity."  3 Leigh's R. (Va.) 667.

Fletcher, in his amended bill, prays for compensation for improvements, if his prayer for rescission should be granted.    For Wilson it is contended, that should such a decree be made, Fletcher is certainly not entitled to an allowance for improvements, as against Wilson ; the doctrine of allowance for improvements, is, that if a party, purchaser, or possessor, bonâ fide, through mistake or fraudulent misrepresentation, believes he has, or has good reason to expect he will have, a good title to premises, and under such belief makes improvements, upon being deprived of possession, a court of equity will decree him an allowance for improvements made under such

mistaken impression. But here is no allegation or proof of mistake or fraudulent misrepresentation as to Wilson, nor indeed as to Conn; for the facts of the case show beyond a doubt, nor is it denied, that Fletcher knew, at the time of sale, that Mrs. Conn held in her own right a moiety interest in the property, and that she could not be divested of her rights, without her own free will and consent. Under the circumstances, therefore, Fletcher made the improvements at his own risk. For the doctrine of improvements, as recognized by courts of equity, see 1 Story's Eq. p. 378, 379; 6 Paige, 390, 403, 404, 405. And, moreover, the improvements will be amply compensated by the rents and enjoyment of the property for now upwards seven years.

No objection is made by Fletcher to Wilson's making a part of his answer a cross-bill for the purposes therein set forth, and in reference to the subject-matter of the original bill; and no doubt is entertained by Wilson's solicitor, as to the propriety of the Court's entertaining such a bill. To remove all doubt, however, reference is made to the act of 1838, H. & H.'s Dig. 524, 525, which says, that "Hereafter any defendant or defendants, in any chancery suit, may introduce any new matter material to his, her, or their defence, and call on the complainants to answer," &c.; "and any defendant or defendants may, if he, she, or they choose, make his, her, or their answer or cross-bill against the complainants," &c.; "and like proceeding shall be had thereon as on other bills," &c.

It is well settled, that "where, upon a bill brought by the vendor against the vendee for a specific performance of the contract, and for a payment of the purchase-money, if the decree is for a specific performance, equity will decree the payment of the purchase-money also, as incidental to the general relief, and to prevent a multiplicity of suits, although the vendor might, in many cases, have a good remedy at law for the purchase-money." 2 Story's Eq. 106, and authorities there cited. See also 5 Peters's R. 269, and 5 Paige's R. 235 – 240, which are much stronger.

When a decree is made for a specific performance, the Court will decree payment of the purchase-money, and a sale of the premises by the Master, to raise the purchase-money, if the vendee refuses to pay it. *Clarke* v. *Hall*, 7 Paige, 382, 385.

" A cross-bill is usually brought, either to obtain a necessary discovery of facts in aid of the defence to the original bill, or to obtain full relief to all parties touching the matters of the original bill." Story's Eq. Pl. p. 311, sec. 3 and 9.

As to cases in which cross-bill may be filed for relief in the premises, in behalf of defendant, Story's Eq. Pl. 213, sec. 391 ; p. 314, sec. 394 ; p. 317, sec. 398, 399 ; 6 Paige, 288 ; 2 J. C. R. 355 ; 7 J. C. R. 250.

" The Court will sometimes, at the hearing, and in its discretion, direct a cross-bill ; but this is when it appears that the suit is sufficient to bring before the Court the rights of all the parties, and the matters necessary to a full and just determination of the cause." 7 J. C. R. 250, 253 ; Mitford's Pl. 77.   A cross-bill " is treated, in short, as a mere auxiliary suit ; or as a dependency upon the original suit."   Story's Pl. p. 318.

If, in decreeing a specific performance, a court of equity would also — in order to grant full relief, do full justice between parties, and prevent multiplicity of suits and circuity of action — go further, and decree the payment of the purchase-money, the vendor would have a lien on the property for the purchase-money, which would be enforced by the court.   Is it, therefore, going any further to foreclose the mortgage given for the purchase-money ; which is, in other words, nothing more than decreeing the payment of the purchase-money, and enforcing its lien on the property?   The foreclosing said mortgage, it cannot be denied, is necessary to obtain full relief to all parties touching the matters of the original bill, and to a full and just determination of the cause.   Fletcher claims damages for the profitable speculation he had lost by reason of the delay in making title, and a money decree is sought against Wilson ; and would it be thought that Fletcher should have a decree for damages against Wilson, and Wilson no decree for the purchase-money; or, that after the termination of this case, the suit for the purchase-money at law being enjoined, that Wilson should be left to commence a new action for the purchase-money ?   This would be intolerably harassing and oppressive.

About Wilson's right to the whole of the purchase-money, there can be no doubt: he is the sole heir of Mrs. Conn.   Mrs. Conn

never authorized Conn to sell, nor sold or conveyed her interest in the house and lot : if she had have conveyed, she would have been entitled to the purchase-money, and this Court would have protected it from her husband for her. Conn had no right to sell her interest ; and, surely, the $1000, part of the cash payment of the purchase-money, was ample compensation to him for any interest he could have had : he never had any title to the property, except in right of his wife during her life. It is clearly proved, that he and she never had issue of their bodies ; and of course, on her death, he could have no right to or interest in the real estate of which she died seised : and all her right devolved on her brother, the defendant Wilson, on her death. As to the agreement which Conn alleges, in his cross-bill, to have been entered into by Wilson with him, there is no proof of it : it is flatly denied by Wilson, in his answer to the cross-bill ; and, even if such agreement were entered into by Wilson — to divide the balance of the purchase-money with Conn — it was not sanctioned by Mrs. Conn ; was without any consideration, and would have been a mere *nude pact,* and therefore would not be binding on Wilson, either in law or equity. Furthermore, Mrs. Conn was then living : her interest in said house and lot had not then devolved on Wilson. How could Wilson, therefore, contract, except as to his half interest ? Wilson divided with Conn the $2000 cash payment, giving him $1000, which Conn admits. This Wilson was induced to do, from a belief founded on Conn's representations alone, that his sister was willing to sell her interest, and as her portion of the cash payment : even *it* might be recovered back, for Conn had no right to receive it. But the *pro confesso* decree, taken in open court against Conn, who was made a defendant to Wilson's cross-bill, is conclusive, as to Conn's rights or claim ; and his dismissal of his cross-bill puts beyond controversy all question as to his rights.

There is nothing in the depositions taken by Fletcher material to the cause, or affecting its merits.

CHANCELLOR. In January, 1836, the complainant purchased from the defendants, Wilson and Conn, a house and lot in the city of Natchez, for which a deed was then executed, and acknowledged,

and recorded, and then taken by the defendants, under a promise to procure the signatures and acknowledgment of their respective wives to said deed, and return it to the complainant. The complainant, at the same time, reconveyed the same lot to the defendants, by way of mortgage, to secure a balance of the purchase-money, falling due thereafter. In February, 1839, suit was brought at law for the recovery of the purchase-money. In November, 1840, the complainant filed his original bill, enjoining the suits at law, alleging the failure of the defendants to procure the signatures of their wives and return the deed, although four years had elapsed from the time of their promise to do so ; and praying for either a specific performance of the contract, and for damages on account of the delay, or for a rescission thereof, and for compensation for money expended in repairs. The answer of Wilson shows, that the title to the house and lot descended to himself and his sister (Mrs. Conn) as the heirs of Patrick Wilson ; that Conn had no interest in it, except in right of his wife ; and that the delay to complete the deed arose from her refusal to join in the conveyance ; that she died in 1838, leaving him her sole heir, and that he thus became invested with the entire title to the lot, and tenders a deed thereto from himself and wife ; and then, by way of cross-bill, insists upon a foreclosure of the mortgage given by the complainant, alleging that, by the death of Mrs. Conn, he became exclusively entitled to the mortgage-money. The complainant then filed an amended bill ; and, upon the facts disclosed in the answer, insists upon an absolute rescission of the contract.

From this, and the argument of his counsel, I am led to suppose that the case, on the original and amended bill, is now to be treated as going exclusively for a rescission of the contract, as this is the only point of view in which the counsel have presented it to my consideration. The question is, — Can a rescission be had for defect of title, where no fraud is alleged or proved, and where it is apparent that a perfect title may now be had ? I think that the complainant's title became complete and perfect upon the death of Mrs. Conn, through the operation of the previously executed and delivered deed of Wilson. The title cast upon him by the death of his sister, enured to the benefit of the complainant. No principle is

better settled or more consonant to reason, than that where a person sells property under a defective claim, and afterwards, by purchase or descent, becomes clothed with a perfect title, that title will enure to the benefit of his vendee.   But even if the title of the complainant was not perfected in this way, still, if the defendants are *now* ready to  perfect it, he cannot, I apprehend, have a rescission · on account of any delay to do so.   As a general rule, a court of equity will not rescind a contract for mere defect of title, where there is no fraud, mistake, or misrepresentation by the vendor.   *Thompson* v. *Jackson*, 3 Rand. R. 504.   It is true, that if, at the time of the decree, there is a total inability on the part of the vendor to make title, and there is no adequate remedy at law for the breach of the contract, there the Court will decree a rescission, even though there may have been no actual fraud in the case. *Bullock* v. *Bemis*, 1 A. K. Marshall's Rep. 434 ; *Hepburn* v. *Dunlop*, 1 Wheat. 179. This, I apprehend, is the extent of the exception to the rule.   But my·researches have furnished me with no case, where a rescission has  been decreed merely on account of defect of title, where the vendor showed himself ready and willing to  perfect the title at or before the hearing, unless time had been made important by the terms of the contract, or was necessarily made so from the very nature of the property.   Subject to these exceptions, time is not considered important, in a court of equity ; and even a specific performance will be decreed, where there is no fraud, and the vendor is ready to make a good title at the hearing.   *Hepburn* v. *Auld*, 5 Cranch, 262 ; 3 Cow. Rep. 445 ; *Finley* v. *Lynch*, 2 Bibb, 561 ; 1 Marshall's Rep. 423 ; 3 Bibb, 366.   And yet it is well settled, that a court of equity requires much  stronger grounds for rescinding an agreement, than would induce it to refuse specific performance.   *Seymour* v. *Delancy*, 3 Cow. Rep. 445.   I think, moreover, that it is evident from the reference, in the original deed to the complainant, to the source of the defendant's title, that he must have known that the title to one moiety of the lot was in Mrs. Conn, and not in her husband ; if so, he must be regarded as having purchased with a full knowledge of the alleged defect of title, and, upon well settled principles, could have no relief on that ground. But, however that may be, it is quite clear from the letters of Conn,

exhibited with the bill, and from the deposition of E. Fletcher, that the complainant knew, as early as 1837, of Mrs. Conn's refusal to join in the conveyance of the lot. Upon receiving this notice, he might, if he had so elected, have insisted that the agreement was at an end ; and by giving notice to that effect, and surrendering the possession, he might have discharged himself from the contract. But if such was his intention, he should have taken the step promptly, and upon the first information of the inability or refusal of his vendors to make him a perfect title ; and his neglect to do so, amounts to a waiver of his right to call for a rescission.   1  Sug. Vend. 261 ; 6 Madd. Rep. 18 ; *Lawrence* v. *Dale*, 3 John. Ch. 23 ; *M'Neven* v. *Livingston*, 17 John. R. 437.   He does not appear, however, to have entertained or given notice of any such purpose, until pressed by suit for the payment of the purchase-money ; and even then, he only asked for a rescission of the contract, as an alternative to a failure to get a specific performance. It was not until March, 1842, when he filed his amended bill, that a rescission was exclusively insisted on.   And it is evident from the facts in the case, that he either then had the title by the death of Mrs. Conn, and through the deed of Wilson, or at least that a good title could then be had.   All this the complainant then knew, because he admits, in his answer to the cross-bill, that Mrs. Conn, in whom a title to a moiety of the lot vested, was then dead, and that Wilson is her sole heir.   During all this time, the complainant appears to have had the undisturbed possession and enjoyment of the house and lot.   And I understand the rule to be, that *time* is not generally considered essential in such cases, where the vendee continues in possession, enjoying the premises as fully as though his title were perfect.

In the case of *Roach* v. *Rutherford*, 4 Desaus. Rep. 261, the Court refused to set aside a contract for the purchase of a house and lot, on the allegation of defective title, after a long possession by the purchaser, connected with other acts, amounting to a waiver of the delay to complete title.   And in the case of *Craig* v. *Martin*, 3 J. J. Marsh. Rep. 54, the Court decreed a specific performance of the contract against the vendee, he having been admitted to possession, and the delay of the vendor to complete the contract

having arisen from the peculiar state of the title, without any positive fault on his part. The Court held, that as the vendee had possession, time, in completing the contract, was not important. I am hence of the opinion that the contract should not be rescinded, and shall, accordingly, direct the original and amended bill to be dismissed, unless the complainant *now* claims a specific performance, under the prayer of the original bill ; if so, a decree to that effect will be ordered.

I come now to consider the case of the cross-bill of Wilson, for the foreclosure of the mortgage. To this it is objected, 1. That it introduces new matter. 2. * That Conn, or his assignee, should be made parties thereto, being entitled, as it is said, to a part of the money due on the mortgage.

1. It is true that a party cannot, by his cross-bill, introduce new and distinct subjects of litigation from those which are in controversy in the original suit. To illustrate the rule : — A defendant cannot, by a cross-bill, bring into litigation with the complainant other property than that referred to in the original bill, about which they may have some conflicting claims. *Gallatian* v. *Erwin, et al.*, 1 Hopk. Ch. Rep. 48.

But I take it, if the defendant has a claim upon property which is the subject of the original bill, he may always assert such claim affirmatively against the complainant, by way of cross-bill. Thus ; to a bill for the specific performance of a written contract, the defendant may oppose a cross-bill, for the purpose of having the contract cancelled or delivered up. Story's Eq. Pl. 312, sec. 391. So it seems, that upon a bill by one of two tenants in common for *partition*, the other may set up, by way of cross-bill, that he holds the equitable title to the whole premises, and pray that the legal title in the complainant may be decreed to him. Story's Eq. Pl. 313 ; *German* v. *Mackin*, 6 Paige's Rep. 288.

2. In relation to the second objection, it is too plain for argument, that Conn's contract to sell his wife's interest in the lot, neither divested her title, nor changed the nature of the property. The

---

* The counsel for Fletcher fell into an error, as to Conn's not being a party to Wilson's cross-bill, and have thereby misled the Court. An examination of the record shows that he was a party defendant.

husband has no power, without the consent of the wife, to convert her real property into personalty, so as to change the course of descent, or right of succession. If the wife had joined in the sale of the lot, this would have been a conversion of the property, and would have entitled the husband, or his assignee, to the mortgage-money, in exclusion of the heir-at-law of the wife. *Rogers v. Patterson*, 4 Paige, Rep. 409. But the wife did not join in the deed, and her death having cast the entire title to the lot on the defendant, Wilson, as her heir-at-law, and he having ratified the sale, he of course became entitled to the whole mortgage-money, as an incident of that sale. I conclude, therefore, that Wilson is the only necessary and proper party to the bill for a foreclosure of the mortgage, and that such foreclosure may be properly had upon the cross-bill. Let the case be referred, to ascertain the amount due, and, upon the coming in of the report, a decree of foreclosure and sale may be had. Wilson and Conn will be decreed to pay the costs of both suits.